## A04A2333. HOLCOMB et al. v. WALDEN et al.
### (607 SE2d 893)

ANDREWS, Presiding Judge.

Darlene and Terry Holcomb were riding a motorcycle when a car driven by Franklin Jones swerved in front of them. Terry Holcomb was forced to brake and swerve to avoid hitting Jones. Terry Holcomb lost control of the motorcycle and was killed and Darlene Holcomb was seriously injured as a result. Darlene Holcomb sued Jones and Kathy Harper, the owner of the car. Holcomb also sued Sheriff Neal Walden and Deputy Sheriff Scotty Scarborough. In an earlier encounter with Jones, Scarborough had been informed that Jones did not have a valid driver's license. Holcomb claims the accident would not have occurred if Scarborough had arrested Jones instead of allowing him to drive away in the car.

The trial court granted summary judgment to Walden and Scarborough, holding that they were immune from suit in their official capacities based on sovereign immunity, and immune from suit in their individual capacities based on official immunity. But, because we conclude that under the "public duty doctrine," Deputy Scarborough violated no duty for which he could be held liable in tort for Holcomb's claims, we need not reach the issue of immunity. Accordingly, we affirm the trial court's grant of summary judgment under the right for any reason rule.

This case arose when Deputy Scarborough responded to a 911 call concerning a fight by the side of the highway. When he arrived, he found Robin and Bennie Jones sitting on the shoulder of the road. Bennie Jones appeared to be highly intoxicated and, while Scarborough was talking to him, started to bleed from the nose. Bennie Jones said he had cirrhosis of the liver so Scarborough called for medical help. Bennie Jones told Scarborough that he and Robin had been riding in a car with Franklin Jones, who had put them out because they were arguing. Shortly after, Franklin Jones and Kathy Harper drove up, and Franklin Jones got out of the car and walked over to talk to Scarborough. Jones said that he had dropped Bennie and Robin Jones by the side of the road after he became tired of listening to them argue. Scarborough said that Franklin Jones did not appear to be intoxicated.

At some point, another deputy drove up and the ambulance came in response to the call for help for Bennie Jones. Scarborough also

called his dispatcher and asked for background checks on all four people. The dispatcher informed Scarborough that approximately seven years previously, Franklin Jones had been declared an habitual violator. Scarborough questioned Jones and he said that his license had been "cleared up" and produced a traffic citation from the Georgia State Patrol in lieu of his license. Jones said that the trooper who gave him the citation told him that the Georgia Crime Information Center got backed up from time to time and its information was not always accurate and he should be able to drive on the citation. Scarborough said he believed Jones because this sounded like something that a trooper would in fact have told him. Scarborough asked Jones whether he had been drinking, and Jones told him he had one beer earlier that morning.

Scarborough also went over to look in the car Jones had been driving. He saw two partially burned marijuana cigarettes in the back ashtray. Scarborough asked Kathy Harper, the car's owner, for permission to search the car. She consented and Scarborough found two empty beer cans, a half empty six-pack of beer and a half empty twelve-pack of beer in the rear of the car. The two women consented to a search of their purses and both contained marijuana. Scarborough arrested Harper and Robin Jones for possession of marijuana.

Jones drove away in the car and a short time later caused the accident to Darlene and Terry Holcomb. Jones left the scene of the accident but was arrested shortly after. He was charged with numerous offenses, among which were DUI and driving with a suspended license.

Jones told the officer who stopped him after the accident that he was upset after the arrest of Harper and took a muscle relaxer and a Xanax after talking to Scarborough.

The trial court granted summary judgment to Walden and Scarborough, finding they were immune to suit. This appeal followed.

"The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law." (Citation and footnote omitted.) *City of Rome v. Jordan*, 263 Ga. 26, 27 (426 SE2d 861) (1993). Further, "[t]he initial question of duty precedes any discussion of sovereign immunity, which is a defense rather than an inroad on one of the elements of a tort." Id. at 27, n. 1.

In *City of Rome v. Jordan*, the Supreme Court of Georgia adopted the rule that "liability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public, except where there is a special relationship between the governmental unit and the individual

giving rise to a particular duty owed to that individual." (Punctuation omitted.) Id. This is referred to as the "public duty" doctrine. Id.

The court carved out an exception to this doctrine "where there is a *special relationship* between the individual and the municipality which sets the individual apart from the general public and engenders a *special duty* owed to that individual." (Emphasis in original.) *City of Rome*, supra at 28.

> In order to determine whether such a special relationship exists, we adopt the following requirements: (1) an explicit assurance by the [governmental unit], through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the [governmental unit] that inaction could lead to harm; and, (3) justifiable and detrimental reliance by the injured party on the [governmental unit's] affirmative undertaking.

(Citations and punctuation omitted.) Id. at 29. The Supreme Court also noted "[s]ince the situation is not presented by the facts of this case, we do not determine whether a special duty may exist even in the absence of a special relationship where a police officer is present at the scene of a crime, has the knowledge and the resources to act to the benefit of the injured party, yet does not act." Id. at 29, n. 4.

Holcomb argues that this case falls under the above scenario. We disagree. As discussed in *Landis v. Rockdale County*, 212 Ga. App. 700 (445 SE2d 264) (1994), this exception contemplates a situation "where a police officer is present at the scene of a crime about to be perpetrated against the citizen (who at that point is *an identifiable victim*) and the officer fails to act to protect the citizen despite his ability to do so." (Emphasis supplied.) Id. at 702. This situation is therefore inapplicable to the facts of the instant case.

Holcomb also argues that under certain language in *Landis* the officer can be liable. This language is found in Restatement, Torts 2d, § 319, which provides: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." (Punctuation omitted.) Id. at 703. But, this exception has been discussed only in "cases where there is evidence of some type of established, continuous relationship with the third party in which control is exercised." Id. at 704. See *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982); *Keppler v. Brunson*, 205 Ga. App. 32 (421 SE2d 306) (1992); *Ermutlu v. McCorkle*, 203 Ga. App. 335, 336-337 (416 SE2d 792) (1992); *Associated Health Systems v. Jones*, 185 Ga. App. 798, 801-802 (366 SE2d 147) (1988). "The passing encounter of a police

officer with a third person" where the officer may or may not determine that probable cause exists to make an arrest, does not give rise to the type of "special relation" contemplated in § 315 (a). *Landis*, supra at 704.

Accordingly, because the officer's duty was to the public and not to the individual plaintiffs in this case, the "public duty doctrine" controls the facts of this case. See *City of Rome*, supra (city and police not liable for failure to respond to emergency call); *Tilley v. City of Hapeville*, 218 Ga. App. 39 (459 SE2d 567) (1995) (city and officer owed no duty to individual motorist who was injured when his car struck an abandoned car on the interstate); *Landis*, supra (officer who failed to stop noticeably intoxicated motorist owed no duty to plaintiff's decedent who was later killed in accident with that motorist).

Because this case is controlled by the "public duty doctrine," we do not reach the issues of sovereign or official immunity. *City of Rome*, supra at 27. Although the trial court's order did not address the "public duty doctrine," an order right for any reason will be affirmed. *Kidd v. First Commerce Bank*, 264 Ga. App. 536, 540 (591 SE2d 369) (2003).

*Judgment affirmed. Miller, J., concurs. Ellington, J., concurs in the judgment only.*

DECIDED NOVEMBER 19, 2004 —
RECONSIDERATION DENIED DECEMBER 2, 2004 — ▮▮▮▮▮▮▮▮▮

*Hasty, Pope & Ball, William G. Hasty, Jr., Patricia B. Ball*, for appellants.

*Terry E. Williams, Jason C. Waymire*, for appellees.

